UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

THE BROOKLYN UNION GAS COMPANY d/b/a
NATIONAL GRID NY,

                    Plaintiff,

            v.

EXXON MOBIL CORPORATION, UNITED
STATES OF AMERICA, PARAGON OIL
INC./TEXACO, INC., BAYSIDE FUEL OIL
DEPOT CO., IRON MOUNTAIN, INC., CITY OF
NEW YORK, MOTIVA ENTERPRISES LLC,
BUCKEYE PARTNERS, L.P., SUNOCO, INC.
(R&M), CHEVRON U.S.A. INC., 19 KENT
ACQUISITION LLC, NORTH 12TH
ASSOCIATES LLC, 35 KENT AVE LLC, NEW
10TH STREET LLC, and PATTI 3 LLC,

                  Defendants.

__**MEMORANDUM & ORDER**__

17-CV-45 (MKB)

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff The Brooklyn Union Gas Company, doing business as National Grid NY,

commenced the above-captioned action on January 4, 2017, against Defendants Exxon Mobil

Corporation ("Exxon"); the United States of America ("United States"); Texaco, Inc.

("Texaco"); Bayside Fuel Oil Depot Co. ("Bayside"); Iron Mountain, Inc. ("Iron Mountain"); the

City of New York; Motiva Enterprises LLC ("Motiva"); Buckeye Partners, L.P. ("Buckeye");

Sunoco, Inc. (R&M) ("Sunoco"); Chevron U.S.A. Inc. ("Chevron"); 19 Kent Acquisition LLC

("19 Kent"); North 12th Associates LLC ("North 12"); 35 Kent Ave LLC ("35 Kent"); New 10th

Street LLC ("New 10"); and Patti 3 LLC ("Patti 3").  (Compl., Docket Entry No. 1.)  On May

23, 2019, Plaintiff filed a Second Amended Complaint (the "SAC"), asserting claims for

recovery of response costs, under section 107(a), and contribution, under section 113(f)(3)(B) of

the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42

U.S.C. § 9601 *et seq.* (the "CERCLA"), the Federal Declaratory Judgment Act, 28 U.S.C. §

2201, and the New York Navigation Law, N.Y. Nav. Law. §§ 170–97.  (SAC, Docket Entry No.

136.)

     All Defendants except the United States (the "Moving Defendants") now move to dismiss

the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  (Moving Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 145; Moving Defs.

Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 146.)  On November 1, 2019,

the United States filed a reply in support of the Moving Defendants' motion.  (United States

Reply in Supp. of Defs. Mot. ("U.S. Reply"), Docket Entry No. 149.)  Plaintiff opposes the

motion.  (Pl. Opp'n to Defs. Mot. ("Pl. Opp'n"), Docket Entry No. 147.)

     For the reasons set forth below, the Court grants the Moving Defendants' motion and: (1)

dismisses the section 113 claim with prejudice; (2) dismisses the section 107 claims and the

Declaratory Judgment Act claim for failure to state a claim; (3) declines to exercise supplemental

jurisdiction over the New York Navigation Law claim and dismisses this claim without

prejudice; and (4) grants Plaintiff leave to amend the section 107 claims, the Declaratory

Judgment Act claim, and to replead the New York Navigation Law claim.

## I.   Background

### a.   Factual background

     Plaintiff seeks to recover for costs "arising out of the disposal, release, and /or threatened

release of hazardous substances into the environment at current and historical facilities owned

and/or operated by [Defendants]" at the area "adjacent to the Bushwick Inlet and the East River

in Brooklyn, New York" (the "Bushwick Site").[1]  (SAC ¶ 1.)  The Bushwick Site consists of areas where Plaintiff previously owned and operated property located on Blocks 2287, 2288, and part of Block 2283 (the "MGP Site"), (*id.* ¶ 49; *see also* Property Historical Ownership Map, annexed to SAC as Ex. A, Docket Entry No. 136-1), and neighboring areas where Defendants engaged in various industrial activities, including the former Pratt Works Refinery (the "Refinery Site"), (SAC ¶ 3).

Defendants have conducted various industrial activities at the Bushwick Site at different times from the mid-1800s until as late as 2014.  (*Id.* ¶¶ 25, 113.)  The United States erected a toluol plant which "generated an estimated 407,000 gallons of toluol," (*id.* ¶¶ 87–88), Exxon owned and operated an oil refinery and "cannery," (*id.* ¶¶ 68–86), Texaco and Motiva owned and operated "petroleum storage facilities," (*id.* ¶¶ 91–92, 112–15), Bayside owned and operated "petroleum storage and distribution facilities," (*id.* ¶¶ 93–105), Iron Mountain operated "a storage facility," (*id.* ¶¶ 106–08), the City of New York owned and operated "a petroleum bulk storage facility," (*id.* ¶¶ 109–11), Buckeye owned and operated "an oil pipeline," (*id.* ¶¶ 116–20), Sunoco owned and operated a "petroleum bulk storage and transportation" terminal, (*id.* ¶¶ 121–23), Chevron owned and operated "an oil truck repair shop and oil truck parking facility," (*id.* ¶¶ 124–26), and Exxon operated "a manufactured gas plant ('MGP')," (*id.* ¶¶ 46–67).  Exxon operated and controlled Plaintiff's "historical Williamsburg Works Manufactured Gas Plant ('Williamsburg MGP')."  (*Id.* ¶ 2.)  Defendants' actions have resulted in the release of solid wastes and hazardous substances at the Bushwick Site.  (*Id.* ¶¶ 3–14.)  19 Kent, North 12,

---

[1]  The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

35 Kent, New 10, and Patti 3 each own parcels of land at the Bushwick Site contaminated with hazardous substances.  (*Id.* ¶¶ 15–19.)

In February of 2007, Plaintiff and the New York State Department of Environmental Conservation (the "NYSDEC") entered into an Order on Consent and Administrative Settlement regarding the investigation and remediation of several former manufactured gas plants that were owned or operated by Plaintiff within the State of New York (the "Consent Order").  (*Id.* ¶¶ 136–38.)  In August of 2007, Plaintiff and the NYSDEC agreed to modify the Consent Order to add certain sites to the agreement, including the Williamsburg MGP (the "Modified Consent Order").  (*Id.* ¶¶ 136–38.)  The Modified Consent Order "directs [Plaintiff], under the supervision of the NYSDEC, to investigate and, if necessary, remediate several MGP sites where coal tar and associated hazardous substances were or may have been disposed at various times in the past."  (*Id.* ¶ 137.)  The Modified Consent Order requires Plaintiff to develop Interim Remedial Measure Plans ("IRM Plans"), subject to NYSDEC approval, for all of the investigative and remedial activities at each site.  (*Id.* ¶¶ 139–40.)

Plaintiff worked with the NYSDEC to develop an IRM Plan for part of the Williamsburg MGP located at Block 2287 and undertook investigations at the Williamsburg MGP.  (*Id.* ¶ 139.)

By letter dated "November 7, 2016, prior to NYSDEC's approval of a final Remedial Design/Remedial Action Work Plan, [Plaintiff] exercised its right to terminate the Williamsburg MGP from the [Modified Consent Order]."  (*Id.* ¶ 140; *see also* Letter to NYSDEC dated Nov. 7, 2017 ("Letter to NYSDEC"), annexed to SAC as Ex. G, Docket Entry No. 136-7.)  In the Letter to the NYSDEC, Plaintiff asserted that "[t]ermination of the Williamsburg [MGP] from the [Modified Consent Order] is appropriate because [Plaintiff] appears to be only one among a number of potential sources whose operations on, adjacent to, and surrounding the

4

[Williamsburg MGP] contributed to contamination on and near the [Williamsburg MGP]" and that the existence of multiple potential sources "renders a site-specific approach too narrow to prepare a scientifically reliable study and remediation plan."  (Letter to NYSDEC 1.)  Plaintiff stated that "[e]ven though [it was] exercising its termination right, [it would] honor its commitment to complete the ongoing interim remedial measure."  (*Id.*)  Pursuant to the Modified Consent Order, termination of the Williamsburg MGP became "effective five days following receipt of written notice, [on] November 14, 2016."  (*Id.*)  Plaintiff continued to investigate and incur costs at the Bushwick Site after the withdrawal from the Modified Consent Order became effective on November 14, 2016.  (SAC ¶ 141.)

On November 1, 2017, Plaintiff and the NYSDEC entered into a Stipulation and Order of Settlement and Discontinuance (the "Stipulation") in an Article 78 proceeding in the New York Supreme Court, Albany County.  (*Id.* ¶ 142.)  Pursuant to the terms of the Stipulation, as of its execution, the Modified Consent Order would "have no further force or effect with regards to the Williamsburg MGP."  (*Id.*)

Plaintiff also continued to investigate and incur costs at the Bushwick Site after the execution of the Stipulation on November 1, 2017.  (*Id.* ¶ 143.)

### b. Procedural background

On January 4, 2017, Plaintiff commenced this action,[2] (Compl., Docket Entry No. 1.), and after a pre-motion conference on February 16, 2017, (*see* Min. Order dated Feb. 16, 2017), Plaintiff filed an Amended Complaint asserting CERCLA claims for recovery of response costs under sections 107(a) and 113, a claim for a declaratory judgment, and a New York Navigation

---

[2] On January 9, 2017, the action was reassigned to this Court.  (*See* Order Reassigning case dated Jan. 9, 2017.)

Law claim, (Am. Compl., Docket Entry No. 75).  Defendants separately moved to dismiss the

Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6),[3] and on April 5, 2018,

the Court referred Defendants' motions to Magistrate Judge Steven Tiscione for a report and

recommendation.  (Order dated Apr. 4, 2018.)

By report and recommendation dated September 10, 2018, Judge Tiscione recommended

that the Court grant the motion to dismiss Plaintiff's section 113 claim with prejudice, and grant

the motion to dismiss the section 107 claim and Declaratory Judgment Act claim with leave to

amend (the "R&R").  (R&R 2, Docket Entry No. 124.)  In the R&R, Judge Tiscione

recommended that the Court dismiss Plaintiff's section 113 claim with prejudice as time-barred

by the applicable three-year statute of limitations.  (*Id.* at 21.)  Judge Tiscione also recommended

that, assuming Plaintiff's section 113 claim did not entirely overlap with and bar the CERCLA

section 107 claim, the Court dismiss Plaintiff's section 107 claim with leave to amend because

Plaintiff failed to plausibly allege that the Bushwick Site comprises a single "facility" for

purposes of section 107.  (*Id.* at 24.)  Judge Tiscione also recommended dismissal of any

purported claim under section 107 for recovery of costs at the Williamsburg MGP after the

termination of that site from the Modified Consent Order because Plaintiff did not plead that it

continued to incur costs at that MGP after it was terminated.  (*Id.* at 28.)  Finally, Judge Tiscione

recommended that the Court dismiss the Declaratory Judgment Act claim because such a claim is

only available in conjunction with an action under section 107.  (*Id.* at 29.)

---

[3]  (United States Mot. to Dismiss, Docket Entry No. 106; United States Mem. in Supp. of United States Mot. to Dismiss, Docket Entry No. 106-1; 35 Kent, 19 Kent, Buckeye, Iron Mountain, Chevron, Patti 3, North 12, Bayside, Texaco, Sunoco, City of New York, Exxon, New 10 Mot. to Dismiss ("Joint Defs. Mot."), Docket Entry No. 108; Joint Defs. Mem. in Supp. of Joint Defs. Mot. ("Joint Defs. Mem."), Docket Entry No. 109; Patti 3 Suppl. Mot. to Dismiss, Docket Entry No. 111; Patti Mem. in Supp. of Joint Defs. Mot., Docket Entry No. 111-1; Motiva Suppl. Mot. to Dismiss, Docket Entry No. 115.)

On March 26, 2019, the Court heard oral argument on Defendants' motions to dismiss the Amended Complaint and adopted the R&R in its entirety and dismissed both the section 113 claims and the section 107 claims.  (Min. Entry dated Mar. 26, 2019.)  The Court granted Plaintiff leave to file a second amended complaint to assert section 107 claims under CERCLA on or before May 27, 2019.  (*Id.*)

On May 23, 2019, Plaintiff filed the SAC, asserting nearly identical claims to those in the Amended Complaint under the same sections of CERCLA — sections 107 and 113, the Declaratory Judgment Act, and the New York Navigation Law.  (*See generally* SAC.)  The SAC includes two section 107 claims asserted as two separate counts for two different time periods.  (*See id.* ¶¶ 145–55, 156–66.)  Count I alleges a claim for costs incurred after November 14, 2016, the date Plaintiff withdrew from the Modified Consent Order.  (*Id.* ¶¶ 145–55.)  Count II alleges a claim for costs incurred after November 1, 2017, the date of the Stipulation.  (*Id.* ¶¶ 156–66.)

On November 1, 2019, the Moving Defendants moved to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6).  (Defs. Mot.; Defs. Mem.)  The United States filed a reply in support of the Moving Defendants' motion.  (U.S. Reply.)  Plaintiff opposes the motion.  (Pl. Opp'n.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b.   Plaintiff's CERCLA claims

CERCLA is a comprehensive federal statute with two primary purposes: "(1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *Price Trucking Corp. v. Norampac Indus.*, 748 F.3d 75, 79 (2d Cir. 2014) (internal quotation marks omitted).  The statute is designed to "promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [a]re born by those responsible for the contamination." *Burlington N. & Sante Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009); *MPM Silicones, LLC v. Union Carbide Corp.* (*MPM Silicones II*), --- F.3d ---, ---, No. 17-3468(L), 2020 WL 4210916, at *18 (2d Cir. July 23, 2020) (noting that "CERCLA's manifest purpose [is] to 'encourag[e] the timely cleanup of hazardous waste sites' by private parties by 'placing the cost of that cleanup on those responsible for creating or maintaining the hazardous condition'" (quoting *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005))).  "Among other measures, CERCLA 'authoriz[es] private parties to pursue contribution or indemnification from potentially responsible parties for expenses incurred responding to environmental threats.'" *MPM Silicones*

*II*, --- F.3d ---, ---, 2020 WL 4210916, at *7 (quoting *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 326 (2d Cir. 2000) (alteration in original)); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) ("CERCLA empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery of expenses associated with those cleanups.").  The statute "imposes strict liability on facility owners and operators, on persons who arranged for the disposal or treatment of hazardous waste at the relevant site, and on persons who transported hazardous waste to the site often collectively referred to as potentially responsible parties." *Asarco LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).  "But CERCLA 'provide[s] property owners an avenue of reprieve; it allows them to seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters — the so-called potentially responsible parties ['PRPs'].'"  *Id.* (citing *Niagara Mohawk Power Corp.*, 596 F.3d at 120).

Section 107 "authorizes the United States, a state, or 'any other person' to seek reimbursement for all removal or remedial costs associated with the hazardous materials on the property." *Niagara Mohawk Power Corp.*, 596 F.3d at 120–21 (citing 42 U.S.C. § 9607(a)(4)). Section 113 provides PRPs who have been sued under section 107 with a right of contribution from other PRPs and also provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially-approved settlement.  *Id.* at 121 (citing 42 U.S.C. § 9613(f)(3)(B), (f)(1)).  Therefore, "[w]hile [section] 107(a) cost recovery actions and [section] 113(f) contribution actions offer 'complementary yet distinct' remedies, there is overlap between them." *Asarco LLC v. Atlantic Richfield Co.*, 866 F.3d 1108, 1116 (9th Cir. 2017).

9

### i.   Section 113 claim

The Moving Defendants argue that Plaintiff's section 113 claim has already been dismissed with prejudice and assert that the SAC "inexplicably attempts to assert a CERCLA [section] 113(f)(3)(B) contribution claim against all [D]efendants," in "direct contravention of this Court's dismissal with prejudice of the very same claim."  (Defs. Mem. 6.)  The Moving Defendants also assert in a footnote that they "have incurred substantial costs in reviewing and responding to the [SAC]" and that "[f]or good reason, asserting the same arguments without any new factual allegations is sanctionable behavior."  (*Id.* at 7 n.8.)

Plaintiff "does not dispute that the Court dismissed its CERCLA [section] 113 claim with prejudice," but asserts that it "respectfully disagrees with the Court's ruling and has repled its CERCLA [section] 113 claim for the sole purpose of preserving this issue for appeal."  (Pl. Opp'n 7.)  In support, Plaintiff argues that "[n]o controlling authority in the Second Circuit bars a moving party from repleading a dismissed claim to preserve the issue for appeal."  (*Id.* (citing *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004)).)  Plaintiff also argues that "[t]he Court has already granted the relief the Moving Defendants appear to seek, and, therefore, it would be unnecessary for the Court to grant the additional relief sought."  (*Id.*)

Based on Plaintiff's representation that it is not seeking re-adjudication on this claim given the Court's prior decision dismissing the claim with prejudice, the Court grants the Moving Defendants' motion as to this claim based on the Court's prior ruling, as it is the law of the case.  *See Ariz. Premium Fin. Co. v. Empls. Ins. of Wausau, of Wausau Am. Mut. Co.*, 586 F. App'x 713, 716 (2d Cir. 2014) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))); *Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15-

CV-8974, 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) ("Courts apply the law of

the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue

or necessarily resolved it by implication." (quoting *Aramony v. United Way of Am.*, 254 F.3d

403, 410 (2d Cir.  2001))).

  As the Moving Defendants argue and Plaintiff appears to concede, in adopting the R&R,

the Court dismissed Plaintiff's section 113 claim with prejudice because it was time-barred.  (*See*

Min. Entry dated Mar. 26, 2019.)  Plaintiff does not assert that the section 113 claim as alleged in

the SAC differs in a material way from the section 113 claim previously dismissed by the Court.

*See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316–17 (S.D.N.Y. 2015) ("The mere filing of an

[a]mended [c]omplaint does not entitle Plaintiff to relitigate his claims absent new factual

allegations."), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).  In addition, although Plaintiff argues that it

is "unnecessary for the Court to grant the additional relief sought by the Moving Defendants'

[m]otion," (Pl. Opp'n 7), the Moving Defendants did not move for sanctions and do not request

any relief beyond a dismissal of the section 113 claim with prejudice, (*see* Defs. Mem 7 n.8

(noting that "asserting the same arguments without any new factual allegations is sanctionable

behavior" but not requesting that the Court sanction Plaintiff)).  Because the Court previously

found Plaintiff's section 113 time-barred and dismissed that claim with prejudice, the Court's

dismissal of Plaintiff's section 113 claim is the law of the case and Plaintiff is barred from

reasserting a section 113 claim in the SAC.  *See Ragbir v. Lynch*, 640 F. App'x 105, 108 (2d Cir.

2016) ("The law of the case doctrine commands that 'when a court has [explicitly or implicitly]

ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case.'" (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009))).

Accordingly, the Court grants the Moving Defendants' motion as to the section 113 claim and dismisses the section 113 claim with prejudice.

### ii. Section 107 claims

The Moving Defendants argue that the Court should dismiss the section 107 claims "[b]ecause [Plaintiff] brazenly ignored, and did nothing to overcome, the well-reasoned analysis of the R&R and this Court's dismissal of [the SAC's] allegations as inadequate to establish that the various parcels comprising what it calls the 'Bushwick Site' are a single CERCLA 'facility.'" (Defs. Mem. 8.) In support, the Moving Defendants argue that the SAC has "defects" which are "the exact same as those . . . in [the Amended Complaint]" and that "[p]aragraphs 1 through 135 of the two complaints, upon which [Plaintiff] bases its theory that all blocks and lots referenced in the [SAC] constitute a single CERCLA 'facility,' are identical." (*Id.* at 9.) The Moving Defendants also argue that "with no new facts alleged to warrant a different outcome . . . . the Court's prior ruling on this issue remains the law of the case." (*Id.*) The Moving Defendants also argue that the SAC "fails to offer any factual nexus that might link together the differences in ownership, operational history, and sources of contamination among the various parcels of land in the [Bushwick Site] such that they could be considered a single CERCLA 'facility.'"[4]

---

[4] The Moving Defendants also argue that the SAC "fails to allege facts to support the five elements necessary to assert a viable claim under [section] 107 at each of the parcels" and the SAC "fails to sufficiently allege that [Plaintiff] incurred necessary response costs consistent with the National Contingency plan for Work Outside of the 2007 Consent Order and Administrative Settlement." (Defs. Mem. 8, 14.) In response, Plaintiff argues that a "complaint states a plausible Section 107 claim even where it does not identify any specific response costs." (Pl. Opp'n 19.) Because, as discussed below, the Court finds that Plaintiff fails to adequately allege that the Bushwick Site is a single CERCLA facility and dismisses the section 107 claims

(*Id.* at 13.)  The Moving Defendants assert that the SAC "describes various properties with disparate ownership, operation, and contamination histories" and that Plaintiff "cannot ignore the factual distinctions it draws in its own pleading, and at the same time endeavor to group the properties together simply for the sake of leverage against more parties."  (*Id.* at 10–11.)

In response, Plaintiff argues that "[the Moving] Defendants' reliance on the R&R is inappropriate because the Court did not adopt the reasoning of the R&R, and the R&R is not the law of the case on the issue of whether [Plaintiff] has sufficiently pleaded that the Bushwick Site is a 'facility.'"  (Pl. Opp'n 11.)  In support, Plaintiff argues that "contrary to Moving Defendants' contentions, the Court did not rule that [Plaintiff] had to specify which structures on the Bushwick Site constitute a single or separate 'facility' for purposes of Section 107" and cites to the transcript of the March 26, 2019 oral argument to argue that "[a]t this stage of litigation, [Plaintiff] need plead only sufficient facts that 'identify the facility.'"  (*Id.* at 12 (citing Mar. 26, 2019 Oral Arg. Tr. ("Oral Arg. Tr.") 23:2–5, Docket Entry No. 140).)  Plaintiff asserts that "[b]eyond its statement about excluding work performed under the [Modified Consent Order] . . . the Court did not adopt the reasoning of the R&R underlying its recommendation to dismiss the Section 107 claim without prejudice."  (*Id.* at 10 (citing Oral Arg. Tr. 23:4–6, 23:16–24:11).)  In addition, Plaintiff argues that "it is a question of fact as to whether a particular portion or parcel

---

on this ground, the Court does not address the parties' arguments as to the sufficiency of the allegations in the SAC with regard to the remaining elements of a section 107 claim.

within the Bushwick Site will be included in the 'facility' and that fact will be informed by fact and expert discovery by the parties and cannot be resolved on a motion to dismiss." (*Id.*)

For the reasons discussed below, the Court finds that the SAC fails to correct the deficiencies identified in the Amended Complaint and, thus, fails to plausibly allege that the Bushwick Site is a single CERCLA "facility."

"Section 107(a) claims are brought by federal or state agencies that have incurred response costs or PRPs who incur CERCLA clean up costs without judicial or administrative intervention." *Niagara Mohawk Power Corp.*, 596 F.3d at 127.  A section 107 claim is not available when a party had a right of contribution under section 113 for those same costs because allowing a party to proceed under section 107 as well would "in effect nullify" congressional intent of creating a distinct contribution remedy under section 113*. Id.* at 128; *see also Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 767 (6th Cir. 2014) ("[I]t is sensible and consistent with the text to read § 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a)."); *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013) ("[W]e agree with our sister circuits that a plaintiff is limited to a contribution remedy when one is available.").  Thus, to the extent that a plaintiff seeks response costs pursuant to section 107 that overlap with a section 113 claim, the plaintiff is barred from pursuing those response costs under section 107.  *Niagara Mohawk Power Corp.*, 596 F.3d at 128–29 (finding that the plaintiff's claim "fit[] squarely within the more specific requirements of § 113(f)(3)(B)" such that the plaintiff could not also seek reimbursement pursuant to section 107).

To state a cause of action under section 107, a plaintiff must establish that:

> (1) the defendant is an 'owner' or is otherwise liable under 42 U.S.C. § 9607(a)(1)–(4); (2) the site is a 'facility' as defined by 42 U.S.C.

14

§ 9601(9); (3) there has been a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or the threat; and (5) the costs and response conform to the National Contingency Plan.

*Price Trucking Corp.*, 748 F.3d at 80 (citing *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 602–63 (2d Cir. 1999)).  A facility is defined under CERCLA as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

*New York v. Next Millennium Realty, LLC*, 160 F. Supp. 3d 485, 506 (E.D.N.Y. 2016) (quoting 42 U.S.C. § 9601(9)).  Courts have interpreted "facility" broadly.  *See Cytec Indus., Inc. v. B.F. Goodrich Co.*, 232 F. Supp. 2d 821, 836 (S.D. Ohio 2002) (finding that "usually, although perhaps not always, the definition of facility will be the entire site or area, including single or contiguous properties, where hazardous wastes have been deposited as part of the same operation or management"); *Clear Lake Props. v. Rockwell Int'l Corp.*, 959 F. Supp. 763, 768 (S.D. Tex. 1997) (rejecting the argument that a laboratory building and the ground upon which it sits constitute two distinct facilities); *S. Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.*, 1997 WL 457510, at *5 (N.D. Tex. Aug. 7, 1997) (finding that "[u]nder the broad statutory definition, the presence of arsenic in these locations is sufficient to establish that the entire [c]ommerce [s]ite is a 'facility' within the meaning of CERCLA."); *see also Axel Johnson Inc. v. Carroll Carolina Oil Co.*, 191 F.3d 409, 417–18 (4th Cir. 1999) (rejecting the argument that tanks and spill areas can be regarded as separate facilities when they are on an area that itself qualifies as a facility; *Yankee Gas Servs. Co. v. UGI Utils., Inc.*, 616 F. Supp. 2d 228, 270–71 (D. Conn. 2009) ("[A] site with a single source of pollution is almost always considered one 'facility'

15

within the meaning of CERCLA and is generally not divisible absent extraordinary

circumstances.").  "The words of the statute suggest that the bounds of a facility should be

defined at least in part by the bounds of the contamination."  *United States v. Township of*

*Brighton*, 153 F.3d 307, 313 (6th Cir. 1998).  "However, an area that cannot be reasonably or

naturally divided into multiple parts or functional units should be defined as a single 'facility,'

even if it contains parts that are non-contaminated."  *Id.*; *see also Niagara Mohawk Power Corp.*,

291 F. Supp. 2d at 125 ("Separate parcels should be considered as a single facility if they 'cannot

be reasonably or naturally divided into multiple parts or functional units.'" (quoting *United*

*States v. 150 Acres of Land*, 204 F.3d 698, 709 (6th Cir. 2000))), *partially rev'd on other*

*grounds*, 596 F.3d 112 (2d Cir. 2010).

      Despite the broad definition, courts in this Circuit have declined to find that separate

parcels that do not share common historical ownership or a common contaminant constitute a

single CERCLA "facility."  *See New York v. Gen. Elec. Co.*, No. 14-CV-747, 2017 WL 1239638,

at *21 (N.D.N.Y. Mar. 31, 2017) (finding that two sites were not a single "facility" despite a

"common source of contamination" because "[t]he properties were not operated as a single unit

together" and "did not have a common owner at the time of the contamination"); *Alprof Realty*

*LLC v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 09-

CV-5190, 2012 WL 4049800, at *8 (E.D.N.Y. Sep. 13, 2012) (finding that the alleged site

constituted two separate facilities and noting that  "if the [three separate properties] had been

owned and operated together as a single waste disposal facility that caused hazardous substances

to be released onto all three properties, then the cases cited by the [the defendant] might suggest

that the entire site should be designated a single CERCLA facility for liability purposes.

However, no such relationship between the properties is alleged in this case").  Nor does the

spread of contamination onto neighboring property necessarily make such property a "facility" within the meaning of CERCLA.  *See Alprof Realty LLC*, 2012 WL 4049800, at *8 ("The cases cited . . . do not establish that a CERCLA facility must always be defined to include the entire area of contamination, and they particularly do not stand for the proposition that an unrelated neighboring property onto which contamination spreads becomes part of the CERCLA facility.").

As discussed above, in the R&R, Judge Tiscione recommended that the Court dismiss the section 107 claims "for CERCLA 107 sites not covered by the [Modified Consent Order]" because "Plaintiff . . . failed to sufficiently plead that the Bushwick Site constitutes a 'facility' under CERCLA 107." (R&R 24.)  Although Judge Tiscione noted that "in theory, Plaintiff can pursue a CERCLA 107 claim for any expenses incurred on the Bushwick Site for sites not covered by the [Modified Consent Order]" and could "pursue a claim for expenses, if any, incurred on the Williamsburg MGP after termination of that site from the [Modified Consent Order]," he ultimately recommended that the Court dismiss both claims because "Plaintiff . . . failed to sufficiently plead either claim under CERLCA 107." (*Id.*)  In support, Judge Tiscione noted that he had "found no authority . . . that treats an area containing various structures that were never under common ownership or control and that does not involve contamination by a single contaminant as a single 'facility.'" (*Id.*)  At the March 26, 2019 oral argument on Defendants' motion to dismiss the Amended Complaint, the Court adopted the R&R and "granted Defendants' motion to dismiss the Amended Complaint in its entirety." (Min. Entry dated Mar. 26, 2019; Oral Arg. Tr.)  Plaintiff has not presented any reasons for the Court to disturb its prior decision adopting the R&R and dismissing Plaintiff's section 107 claims as insufficiently pleaded in the Amended Complaint, and the prior ruling is the law of the case.  *See*

*Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods*, No. 01-CV-8378, 2006 WL 2853874, at *4 (E.D.N.Y. Sept. 29, 2006) (rejecting the defendant's argument opposing summary judgment because the court's prior adoption of the magistrate judge's report and recommendation established the law of the case and noting that "[t]he [c]ourt maintains the position that its prior ruling was correct, and thus adheres to it, as the law of the case").

Plaintiff concedes that the portions of the SAC defining the Bushwick Site facility are unchanged from those in the Amended Complaint that the Court dismissed.  (*See* Pl. Opp'n 12 ("In the [SAC], [Plaintiff] clarifies in Counts I and II that claims for response costs at the Bushwick Site commence after November 14, 2016 or November 1, 2017, respectively.  The scope of the 'facility' as defined in the [SAC] remains unchanged.").)

In addition, consistent with Judge Tiscione's observation in the R&R regarding Plaintiff's opposition to the motion to dismiss the Amended Complaint, in its opposition to the instant motion Plaintiff has not identified any binding authority to support a finding that separate structures and parcels with different contaminants comprise a single CERCLA "facility" absent allegations of either common ownership, use, or a common contaminant.  (*See* R&R 25.)  As the Moving Defendants argue in their reply, the cases Plaintiff cites in support of its argument that it need not plead either a common contaminant or common historical ownership to plausibly allege that the Bushwick Site constitutes a single CERCLA facility are distinguishable from the facts of this case.  (*See* Moving Defs. Reply in Further Supp. of Defs. Mot. ("Defs. Reply") 7, Docket Entry No 148.)  Plaintiff cites to *United States v. Vertac Chemical Corp.*, 364 F. Supp. 2d 941 (E.D. Ark. 2005), *aff'd*, 453 F.3d 1031 (8th Cir. 2006), and *Southern Pacific Transportation Co.*, 1997 WL 457510, both of which involved facilities made up of multiple structures or parcels that shared either a common contaminant or a single source of contamination.  In *Southern Pacific*

*Transportation Co.*, the court found that a number of properties surrounding a chemical plant, together with the plant, constituted a single CERLCA facility because each property and the plant shared a common contaminant of arsenic.  *S. Pac. Transp.*, 1997 WL 457510, at *5; *see id.* ("[A]rsenic, has come to be located on the entire . . . [s]ite — that is, at the location of the former . . . chemical plant, on the adjacent [r]ailroad property, at the cotton gins, in [the] [c]reek, and in the nearby residential areas. Under the broad statutory definition, the presence of arsenic in these locations is sufficient to establish that the entire . . . [s]ite is a 'facility' within the meaning of CERCLA.").  In *Vertac Chemical Corp.*, the court concluded that a chemical plant and several "off-site areas," including "soils, the floodplains and stream sediments . . . , sanitary sewer lines, and two municipal sewer plants and their structures" were "one facility for purposes of liability under CERCLA," in part because the plant was the single source of groundwater contamination and "the hazardous substances may have contaminated large parts of a plant, while initially being emitted from only one tank." *Vertac Chem. Corp.*, 364 F. Supp. 2d at 958–59.  Unlike the facilities in *South Pacific Transportation Co.* and *Vertac Chemical Corp.*, Plaintiff alleges contamination by multiple hazardous substances originating from multiple distinct sources.

Plaintiff's arguments that it is unreasonable to divide the Bushwick Site into multiple, smaller facilities are also unavailing.  Plaintiff's reliance on *MPM Silicones, LLC v. Union Carbide Corp.* (*MPM Silicones I*), No. 11-CV-1542, 2016 WL 3962630 (N.D.N.Y July 7, 2016), *vacated and remanded by MPM Silicones II*, --- F.3d ---, ---, 2020 WL 4210916, in support of its argument that "[t]he Bushwick Site is a single facility because it cannot be 'reasonably or naturally divided into multiple parts of functional units . . . even if it has parts that are non-contaminated,'" (Pl. Opp'n 18 (quoting *MPM Silicones I*, 2016 WL 3962630, at *26)), is

misplaced.[5]  As Plaintiff's own summary of that case concedes, in *MPM Silicones I*, while the court did determine that multiple units were a single facility, those multiple units also shared a common historical ownership and common source of contamination.  *See MPM Silicones I*, 2016 WL 3962630, at *27 (noting that "[i]n this case, the common source of any potential PCB contamination weighs in favor of holding that Landfill No. 2 is part of the same 'facility' as the rest of the [s]ite" and that "[t]he fact that Landfill No. 2 is a quarter of a mile from the NIS and any other SWMU, and the fact that the entire property has been operated by a single owner, weigh in favor of finding that there is a single facility").  Likewise, in *New York v. Westwood-Squibb Pharmaceutical Co.*, 138 F. Supp. 2d 372 (W.D.N.Y. 2000), the court found that an MGP site and an adjacent 8.8 acres of land constituted a single CERCLA facility because the adjacent land and "the [MGP] — with its various underground structures — share the same type of contaminants and, therefore, should be treated as a single CERCLA facility."  *Id.* at 379.

Because Plaintiff concedes that the portions of the SAC alleging that the Bushwick Site is a single CERCLA facility are unchanged from those in the Amended Complaint that the Court dismissed as insufficiently pleaded, (*see* Pl. Opp'n 12), and the SAC does not otherwise allege that the separate parcels at the Bushwick Site share a common historical ownership or

---

[5]  The language Plaintiff quotes from *MPM Silicones I* omits important context which further underscores why it does not support Plaintiff's position.  In evaluating whether the site at issue in *MPM Silicones I* constituted a single CERCLA facility, the court noted that "[a] *contaminated site that is or was managed as a whole* constitutes a single facility for CERCLA purposes . . . [and] a widely contaminated area should not unnaturally be divided into multiple facilities in order to limit a party's liability."  *MPM Silicones, LLC v. Union Carbide Corp.* (*MPM Silicones I*), No. 11-CV-1542, 2016 WL 3962630, at *26 (N.D.N.Y. July 7, 2016) (quoting *Alprof Realty LLC v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 09-CV-5190, 2012 WL 4049800, at *8 (E.D.N.Y. Sept. 13, 2012) (emphasis added).

contaminant, the SAC does not plausibly allege that the Bushwick Site constitutes a single CERCLA facility.

Accordingly, the Court grants the Moving Defendants' motion as to the section 107 claims and dismisses Plaintiff's section 107 claims for failure to state a claim.[6]

### c.   Plaintiff's New York Navigation Law claim

In view of the Court's dismissal of Plaintiff's federal CERCLA claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's New York Navigation Law claim. *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims."). Accordingly, the Court dismisses Plaintiff's New York Navigation Law claim without prejudice.

---

[6]   Because the Court finds that the SAC does not plausibly allege a section 107 claim, the Court dismisses Plaintiff's Declaratory Judgment Act claim without prejudice. *See BASF Corp. v. Albany Molecular Rsch., Inc.*, No. 19-CV-0134 2020 WL 705367, at *13 (N.D.N.Y. Feb. 12, 2020) ("Since the [c]ourt has dismissed [the] [p]laintiff's cost recovery claims, the [c]ourt dismisses [the] [p]laintiff's requests for declaratory relief made in connection with its § 107(a) claims.").

####    d.   Leave to amend

In opposing the Moving Defendants' motion to dismiss the SAC, Plaintiff requested, in the alternative, "leave to amend the [SAC] to plead additional facts delineating the separate facilities within the Bushwick Site," in the event the Court found that Plaintiff had insufficiently alleged that the Bushwick Site constitutes a single CERCLA facility.  (Pl. Opp'n 11.)

The Moving Defendants request that the Court dismiss the SAC with prejudice.  (Defs. Reply 15.)

Under Rule 15(a) of the Federal Rules of Civil Procedure, district courts should "liberally grant[] . . . leave to amend" a complaint.  *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015); *see also Cox v. Blackberry Ltd.*, F. App'x. 23, 25 (2d Cir. 2016).  As discussed above, Plaintiff's section 107 claims fail because Plaintiff failed to demonstrate a nexus of common historical ownership or a common contaminant between the various parcels of the Bushwick Site.  Therefore, the Court grants Plaintiff leave to amend the SAC as to the section 107 claims to add allegations specifying which structures on the Bushwick Site constitute separate CERCLA facilities and what response costs, if any, were associated with the release of hazardous substances at each of those facilities.  Plaintiff may also replead its Declaratory Judgment Act and New York Navigation Law claims.  Plaintiff shall file an amended complaint, if any, within thirty (30) days of the date of this Memorandum and Order.  If Plaintiff elects not to file an amended complaint or fails to file an amended complaint within thirty (30) days of this Memorandum and Order, the Court will dismiss the section 107 claims with prejudice.

### III.  Conclusion

For the foregoing reasons, the Court grants the Moving Defendants' motion and: (1) dismisses the CERCLA section 113 claim with prejudice; (2) dismisses the CERCLA section

107 claims and the Declaratory Judgment Act claim for failure to state a claim; (3) declines to

exercise supplemental jurisdiction over Plaintiff's New York Navigation Law claim and

dismisses this claim without prejudice; and (4) grants Plaintiff leave to amend as to the section

107 claims, the Declaratory Judgment Act claim, and to replead the New York Navigation Law

claim.

Dated: August 14, 2020
　　　　Brooklyn, New York

　　　　　　　　　　　　　　　SO ORDERED:


　　　　　　　　　　　　　　　____s/ MKB_____
　　　　　　　　　　　　　　　MARGO K. BRODIE
　　　　　　　　　　　　　　　United States District Judge