UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

THE BROOKLYN UNION GAS COMPANY d/b/a
NATIONAL GRID NY,

        Plaintiff,

    v.

EXXON MOBIL CORPORATION,

        Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**

17-CV-45 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff The Brooklyn Union Gas Company, doing business as National Grid NY,

commenced the above-captioned action on January 4, 2017, against Defendant Exxon Mobil

Corporation ("Exxon") and fourteen other defendants not named in the present proceeding.[1]

(Compl., Docket Entry No. 1.)  Plaintiff filed an Amended Complaint asserting claims for

recovery of response costs under section 107(a), and contribution under section 113(f)(3)(B) of

the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42

U.S.C. § 9601 *et seq.* ("CERCLA"), the Federal Declaratory Judgment Act, 28 U.S.C. § 2201

(the "Declaratory Judgment Act"), and the New York Navigation Law, N.Y. Nav. Law §§ 170–

---

[1]  Plaintiff, initially and in two amended complaints, brought claims against Exxon; the
United States of America; Paragon Oil Inc./Texaco, Inc.; Bayside Fuel Oil Depot Co.; Iron
Mountain, Inc.; the City of New York; Motiva Enterprises LLC; Buckeye Partners, L.P.; Sunoco,
Inc. (R&M); Chevron U.S.A. Inc.; 19 Kent Acquisition LLC; North 12th Associates LLC; 35
Kent Ave LLC; New 10th Street LLC; and Patti 3 LLC, (Compl.; Am. Compl., Docket Entry No.
75, Second Am. Compl. ("SAC"), Docket Entry No. 136), and amended the SAC further to
assert claims only against Exxon, (Third Am. Compl. ("TAC"), Docket Entry No. 156).  On
March 6, 2017, the Court granted Chevron Corporation's motion to substitute Chevron U.S.A.
Inc. for Chevron Corporation and terminated the case against Chevron Corporation.  (Order
dated Mar. 6, 2017; Mot. to Substitute Party, Docket Entry No. 52.)

97.  (Am. Compl.)  The Court dismissed the Amended Complaint and granted leave to file a second amended complaint to assert section 107 claims.  (Min. Entry dated Mar. 26, 2019.)  On May 23, 2019, Plaintiff filed a SAC, asserting claims for recovery of response costs under sections 107(a) and 113, Declaratory Judgment Act claims, and a New York Navigation Law claim.  (SAC.)  On August 14, 2020, the Court dismissed Plaintiff's CERCLA § 113 claim with prejudice, dismissed all other claims without prejudice, and granted Plaintiff leave to amend its CERCLA § 107 and Declaratory Judgment Act claims and to replead its New York Navigation Law claim.  (Mem. and Order dated Aug. 14, 2020 (the "August 2020 Decision") 22–23, Docket Entry No. 152; Corrected Mem. and Order dated Aug. 19, 2020, Docket Entry No. 154 (reflecting that the United States also moved to dismiss the SAC).)  On September 14, 2020, Plaintiff filed a TAC, asserting the same claims raised in the SAC, including the CERCLA § 113 claim, but only as to Exxon.  (TAC 15–25.)  Defendant now moves to dismiss the TAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes.[2]

For the reasons set forth below, the Court grants Defendant's motion to dismiss the section 113 claim and denies Defendant's motion to dismiss the section 107, Declaratory Judgment Act, and New York Navigation Law claims.

---

[2]  (Def.'s Mot. to Dismiss the TAC ("Def.'s Mot."), Docket Entry No. 160; Def.'s Mem. of Law. in Supp. of Def.'s Mot. ("Def.'s Mem.") 19, Docket Entry No. 160-1; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 161.)  On June 15, 2021, the parties filed supplemental letters explaining how the Supreme Court's decision in *Territory of Guam v. United States*, 593 U.S. ---,141 S. Ct. 1608 (2021), impacts the motion before the Court.  (Def.'s Letter dated June 15, 2021, Docket Entry No. 165; Pl.'s Letter dated June 15, 2021, Docket Entry No. 166.)

## I.   Background

### a.   Factual background

Plaintiff seeks to recover for costs "arising out of the disposal, release, and/or threatened release of hazardous substances into the environment at current and historical facilities owned and/or operated by [Defendant]" at the area "adjacent to the Bushwick Inlet and the East River in Brooklyn, New York."  (TAC ¶ 1.)  Plaintiff owned the Williamsburg Works Manufactured Gas Plant ("Williamsburg MGP") located on Block 2287 (the "Williamsburg MGP Site"), which was "operated and controlled by . . . [Defendant] and/or its corporate predecessors" and was situated "adjacent to the facilities owned and/or operated by Defendant."  (*Id.* ¶ 2.)  Defendant and its corporate predecessors "owned, managed, and/or operated the Pratt Works Refinery (the 'Refinery')," which comprised Blocks 2277 and 2294 (the "Refinery Site").  (*Id.* ¶ 3.)  The Refinery Site "bounds the Williamsburg MGP Site on two sides."  (*Id.* ¶ 21.)

The Refinery was built in the 1860s and "manufactured kerosene from coal and/or crude petroleum and produced naphtha and lubricant oils."  (*Id.* ¶ 3.)  At the height of its operations, the Refinery "handl[ed] more than sixty million gallons per year of kerosene, crude petroleum, refined oils, naphtha, tar, benzene, lubricating oils, gasoline, and turpentine" and "had in excess of forty tar and naphtha tanks onsite, numerous oil/water/solid separation units, and asbestos containing material covered numerous pieces of equipment."  (*Id.* ¶ 26.)  Its operations caused the release of hazardous substances into the environment, such as oil, tar, chemicals, sludges, emulsion solids, tank bottoms, and spent catalyst.  (*Id.* ¶¶ 3–4.)  "[T]hese hazardous substances [also] came into contact with or became entrained with gasoline and other petroleum products that were released at the Refinery Site and Williamsburg MGP Site."  (*Id.* ¶ 4.)  Such substances are "consistent with those associated with kerosene refineries."  (*Id.* ¶ 13.)  The Refinery also

operated a canning factory, which led to the release of other hazardous substances, including

metals, volatile organic compounds ("VOCs"), and semi-volatile organic compounds

("SVOCs"), at the Refinery Site and Williamsburg MGP Site.  (*Id.* ¶¶ 27–28.)  Along with

discharge caused by the Refinery's general operations, (*id.* ¶¶ 36–41), there were also "many

accidents, spills, leaks, and fires at the Refinery," which caused additional releases of hazardous

materials, (*id.* ¶¶ 33–35).

The Williamsburg MGP was constructed in the 1860s by the Williamsburg Gas Light

Company.  (*Id.* ¶ 42.)  Defendant's corporate predecessor, Standard Oil, exercised significant

control over the oil and gas market and eventually formed The Brooklyn Union Gas Company to

acquire the Williamsburg Gas Light Company.  (*Id.* ¶¶ 43, 47.)  "Standard Oil maintained control

of The Brooklyn Union Gas Company and the Williamsburg MGP for decades following this

merger."  (*Id.* ¶ 47.)  The Williamsburg MGP ceased fulltime operations in 1934 and was

dismantled prior to 1941.  (*Id.* ¶ 49.)  "Neither [Plaintiff] nor any of its corporate predecessors or

subsidiaries have had control of the site since 1946."  (*Id.*)  Plaintiff has discovered "significant

petroleum contamination [at the Williamsburg MGP Site], which is entrained with various other

hazardous materials, including, but not limited to, waste oil."  (*Id.* ¶ 59.)  Plaintiff alleges that

Defendant "would have inevitably released hazardous substances at the Williamsburg MGP Site

during the period of Standard Oil's control of The Brooklyn Union Gas Company."  (*Id.* ¶ 50.)

In February of 2007, Plaintiff and the New York State Department of Environmental

Conservation (the "NYSDEC") entered into an Order on Consent and Administrative Settlement

regarding the investigation and remediation of several former manufactured gas plants that were

owned or operated by Plaintiff within the State of New York (the "Consent Order").  (*Id.* ¶¶ 51–

52.)  In August of 2007, Plaintiff and the NYSDEC agreed to modify the Consent Order to add

certain sites to the agreement, including the Williamsburg MGP (the "Modified Consent Order").
(*Id.* ¶ 53.)  Plaintiff worked with the NYSDEC to develop an Interim Remedial Measure Plan for
part of the Williamsburg MGP, (*id.* ¶ 54), but by letter dated "November 7, 2016, prior to
NYSDEC's approval of a final Remedial Design/Remedial Action Work Plan, [Plaintiff]
exercised its right to terminate the Williamsburg MGP from the [Modified Consent Order]," (*id.*
¶ 55).  Pursuant to the Modified Consent Order, termination of the Williamsburg MGP became
"effective five days following receipt of written notice, [on] November 14, 2016."  (*Id.*)  Plaintiff
continued to investigate and incur costs at the Refinery Site and Williamsburg MGP Site after
the withdrawal from the Modified Consent Order became effective on November 14, 2016.  (*Id.*
¶ 56.)

On November 1, 2017, Plaintiff and the NYSDEC entered into a Stipulation and Order of
Settlement and Discontinuance (the "Stipulation") in an Article 78 proceeding in the New York
Supreme Court, Albany County.  (*Id.* ¶ 57.)  Pursuant to the terms of the Stipulation, as of its
execution, the Modified Consent Order would "have no further force or effect with regards to the
Williamsburg MGP."  (*Id.* (quoting Stipulation and Order of Settlement and Discontinuance ¶ 2,
annexed to Notice, Docket Entry No. 116-1).)  After the execution of the Stipulation, Plaintiff
continued to investigate and incur costs at the Refinery Site and Williamsburg MGP Site.  (*Id.* ¶
58.)

In December of 2018, Defendant entered into an Order and Consent with the City of New
York pursuant to the New York Navigation Law, whereby Defendant is required to "investigate
portions of Block 2277 of the Refinery Site."  (*Id.* ¶ 60.)  The City of New York approved
Defendant's "Site Characterization Work Plan" (the "Work Plan"), which provided for a "limited
surficial investigation focused on investigating post-Refinery activity" at the site.  (*Id.* ¶¶ 61–62.)

According to the NYSDEC and supported by the Work Plan, Defendant's investigation is to be completed pursuant to "Article 12 of the New York Navigation Law" and only relates to operations of major oil storage facilities ("MOSFs").  (*Id.* ¶ 62.)  Plaintiff alleges that the planned investigation would not address Defendant's "Refinery releases, which likely exist far below the surficial depths of the MOSF facility," and that Defendant has not previously conducted any investigation into the Refinery Site.  (*Id.* ¶¶ 62–63.)

### b.   Procedural background

On January 4, 2017, Plaintiff commenced this action, (Compl.), and after a pre-motion conference on February 16, 2017, (*see* Min. Order dated Feb. 16, 2017), Plaintiff filed an Amended Complaint asserting CERCLA claims for recovery of response costs under sections 107(a) and 113, a claim for a declaratory judgment, and a New York Navigation Law claim, (Am. Compl.).  Defendants separately moved to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6),[3] and on April 5, 2018, the Court referred Defendants' motions to Magistrate Judge Steven Tiscione for a report and recommendation.  (Order dated Apr. 5, 2018.)

By report and recommendation dated September 10, 2018, Judge Tiscione recommended that the Court grant the motion to dismiss Plaintiff's section 113 claim with prejudice, and grant the motion to dismiss the section 107 claim and Declaratory Judgment Act claim with leave to amend (the "R&R").  (R&R 2, Docket Entry No. 124.)  In the R&R, Judge Tiscione recommended that the Court dismiss Plaintiff's section 113 claim with prejudice as time-barred

---

[3]  (United States' Mot. to Dismiss, Docket Entry No. 106; 35 Kent, 19 Kent, Buckeye, Iron Mountain, Chevron, Patti 3, North 12, Bayside, Texaco, Sunoco, City of New York, Exxon, New 10 Mot. to Dismiss, Docket Entry No. 108; Patti 3 Suppl. Mot. to Dismiss, Docket Entry No. 111; Motiva Suppl. Mot. to Dismiss, Docket Entry No. 115.)

by the applicable three-year statute of limitations.  (*Id.* at 21.)  Judge Tiscione also recommended

that, assuming Plaintiff's section 113 claim did not entirely overlap with and bar the CERCLA

section 107 claim, the Court dismiss Plaintiff's section 107 claim with leave to amend because

Plaintiff failed to plausibly allege that the Bushwick Site — which comprises the Williamsburg

MGP Site and the Refinery Site — comprises a single "facility" for purposes of section 107.  (*Id.*

at 24.)  Judge Tiscione recommended dismissal of any purported claim under section 107 for

recovery of costs at the Williamsburg MGP after the termination of that site from the Modified

Consent Order because Plaintiff did not plead that it continued to incur costs at Williamsburg

MGP after it was terminated.  (*Id.* at 28.)  Finally, Judge Tiscione recommended that the Court

dismiss the Declaratory Judgment Act claim because such a claim is only available in

conjunction with an action under section 107.  (*Id.* at 28–29.)

On March 26, 2019, the Court heard oral argument on Defendants' motions to dismiss the

Amended Complaint, adopted the R&R in its entirety, and dismissed the section 113 and section

107 claims.  (Min. Entry dated Mar. 26, 2019.)  The Court granted Plaintiff leave to file a second

amended complaint to assert section 107 claims under CERCLA.  (*Id.*)

On May 23, 2019, Plaintiff filed the SAC, asserting nearly identical claims to those in the

Amended Complaint under sections 107 and 113 of CERCLA, the Declaratory Judgment Act,

and the New York Navigation Law.  (*See generally* SAC.)  The SAC included two section 107

claims asserted as two separate counts for two different time periods.  (*See id.* ¶¶ 145–55, 156–

66.)  Plaintiff alleged a claim for costs incurred from November 14, 2016, the date Plaintiff

withdrew from the Modified Consent Order, (*id.* ¶¶ 145–55), and a separate claim for costs

incurred after November 1, 2017, the date of the Stipulation, (*id.* ¶¶ 156–66).  On November 1,

2019, Defendants moved to dismiss the SAC for failure to state a claim pursuant to Rule

12(b)(6), (Defs.' Mot. to Dismiss SAC, Docket Entry No. 145), which Plaintiff opposed, (Pl.'s Opp'n to Defs.' Mot. to Dismiss SAC, Docket Entry No. 147).  On August 14, 2020, the Court dismissed Plaintiff's CERCLA section 113 claim with prejudice, dismissed the CERCLA section 107 claims and the Declaratory Judgment Act claim for failure to state a claim, declined to exercise supplemental jurisdiction over Plaintiff's New York Navigation Law claim and dismissed the claim without prejudice; and granted Plaintiff leave to amend as to the section 107 claims, the Declaratory Judgment Act claim, and to replead the New York Navigation Law claim.  (Aug. 2020 Decision 22–23.)

On September 14, 2020, Plaintiff filed the TAC, asserting nearly identical claims raised in the SAC, but only as to Exxon, under sections 107 and 113 of CERCLA, the Declaratory Judgment Act, and the New York Navigation Law.  (TAC 64–125.)  The TAC includes four section 107 claims asserted as four separate counts for two different time periods.  (*See id.* ¶¶ 64–109.)  Plaintiff alleges: (1) a claim for costs incurred from investigating, remediating, and monitoring hazardous substances at the Williamsburg MGP Site and restoring the site since November 14, 2016, the date Plaintiff withdrew from the Modified Consent Order, (*id.* ¶¶ 64–74); (2) a claim for costs incurred from investigating, remediating, and monitoring petroleum residuals from the Refinery Site that have been released into the Williamsburg MGP Site, (*id.* ¶¶ 75–87); (3) a claim for costs incurred from investigating, remediating, and monitoring hazardous substances at the Refinery Site, prior to November 14, 2016, (*id.* ¶¶ 88–98), and (4) a claim for costs incurred from investigating, remediating, and monitoring hazardous substances at the Refinery Site, since November 14, 2016, (*id.* ¶¶ 99–109).

Defendant now moves to dismiss the TAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes.  (Def.'s Mem; Pl.'s Opp'n.)

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

### b.   Plaintiff's CERCLA claims

Defendant argues that Plaintiff's CERCLA claims should be dismissed because Plaintiff fails to plead a section 107 claim and the section 113 claim has been dismissed with prejudice. (Def.'s Mem. 9–10.)

Plaintiff argues that it sufficiently pled section 107 claims and appropriately repleads a section 113 claim to preserve the issue for appeal.  (Pl.'s Opp'n 6–13.)

CERCLA is a comprehensive federal statute with two primary purposes: "(1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *Price Trucking Corp. v. Norampac Indus.*, 748 F.3d 75, 79 (2d Cir. 2014) (quoting *W.R. Grace & Co.–Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 88 (2d Cir. 2009)). The statute is designed to "promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts [a]re born by those responsible for the contamination." *Burlington N. & Sante Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (quoting *Consol. Edison Co. of N.Y., Inc. v. UGI Utilities, Inc*., 423 F.3d 90, 94 (2d Cir. 2005)); *see also MPM Silicones, LLC v. Union Carbide Corp.* (*MPM Silicones II*), 966 F.3d 200, 228 (2d Cir. 2020), *as amended* (Aug. 13, 2020) (noting that "CERCLA's manifest purpose [is] to 'encourag[e] the timely cleanup of hazardous waste sites' by private parties by 'placing the cost of that cleanup on those responsible for creating or maintaining the hazardous condition'" (second alteration in original) (quoting *Consol. Edison Co. of N.Y., Inc.*, 423 F.3d at 94)). "Among other measures, CERCLA 'authoriz[es] private parties to pursue contribution or indemnification from potentially responsible parties ['PRPs'] for expenses incurred responding to environmental threats.'" *MPM Silicones II*, 966 F.3d at 214 (first alteration in original) (quoting *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 326 (2d Cir. 2000)); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) ("CERCLA empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery of expenses associated with those cleanups."). The statute "imposes strict liability on facility owners and operators, on persons who arranged for the disposal or treatment of hazardous waste at the relevant site, and on persons who transported hazardous waste to the site often collectively referred to as [PRPs]." *Asarco LLC v.*

*Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).  "But CERCLA 'provide[s] property owners an avenue of reprieve; it allows them to seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters — the so-called [PRPs].'"  *Id*. (first alteration in original) (quoting *Niagara Mohawk Power Corp.*, 596 F.3d at 120).

Section 107 "authorizes the United States, a state, or 'any other person,'" *Niagara Mohawk Power Corp.*, 596 F.3d at 120–21 (citing 42 U.S.C. § 9607(a)(4)), "to recover 'all costs of [a] removal or remedial action' from 'any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,'" *Territory of Guam v. United States*, 593 U.S. ---, ---, 141 S. Ct. 1608, 1611 (2021) (alteration in original) (quoting 42 U.S.C. § 9607(a)(4)).  Section 113 provides PRPs who have been sued under section 107 with a right of contribution from other PRPs and also provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement.  *Niagara Mohawk Power Corp.*, 596 F.3d at 121 (citing 42 U.S.C. § 9613(f)(3)(B), (f)(1)); *see also Territory of Guam*, 593 U.S. at ---, 141 S. Ct. at 1611 (noting that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement" (alteration in original) (quoting 42 U.S.C. § 9613(f)(2))).  Therefore, "[w]hile [section] 107(a) cost recovery actions and [section] 113(f) contribution actions offer 'complementary yet distinct' remedies, there is overlap between them."  *Asarco LLC v. Atlantic Richfield Co.*, 866 F.3d 1108, 1116 (9th Cir. 2017) (quoting *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 139 (2007)).

For the reasons explained below, the Court grants Defendant's motion and dismisses the section 113 claim with prejudice and denies the motion to dismiss the section 107 claims.

###### i.    Section 113 claim

Defendant argues that Plaintiff's section 113 claim has already been twice dismissed with prejudice and asserts that because the August 2020 Decision "makes the [s]ection 113 claim a nullity, Plaintiff's [s]ection 113 contribution claim should be dismissed again with prejudice." (Def.'s Mem. 9–10.)

Plaintiff "does not dispute that the Court dismissed its CERCLA [section] 113 claim with prejudice," but asserts that it has pled its CERCLA section 113 claim for the "sole purpose of preserving this issue for appeal." (Pl.'s Opp'n 13.)  Plaintiff also argues that "[t]he Court has already granted the relief the Defendant appears to seek," and, therefore, the Court should deny Defendant's motion. (*Id.*)

The Court dismissed Plaintiff's section 113 claim with prejudice because it was time-barred, (Min. Entry dated Mar. 26, 2019), and again dismissed the claim with prejudice because it was moot, (Aug. 2020 Decision).  Plaintiff does not assert that the section 113 claim as alleged in the TAC differs in a material way from the section 113 claim previously dismissed by the Court.  *See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316–17 (S.D.N.Y. 2015) ("The mere filing of an [a]mended [c]omplaint does not entitle [the] [p]laintiff to relitigate his claims absent new factual allegations."), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).  Because the Court previously found Plaintiff's section 113 claim to be time-barred and twice dismissed the claim with prejudice, and Plaintiff represents that it is not seeking re-adjudication given the Court's prior decision, the Court's dismissal of Plaintiff's section 113 claim is the law of the case and Plaintiff is barred from reasserting a section 113 claim in the TAC.  *See Ragbir v. Lynch*, 640 F. App'x 105, 108 (2d Cir. 2016) ("The law of the case doctrine commands that 'when a court has [explicitly or implicitly] ruled on an issue, that decision should generally be adhered to by that court in

subsequent stages in the same case.'" (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir.

2009))); *Ariz. Premium Fin. Co. v. Empls. Ins. of Wausau, of Wausau Am. Mut. Co.*, 586 F.

App'x 713, 716 (2d Cir. 2014) ("[W]hen a court decides upon a rule of law, that decision should

continue to govern the same issues in subsequent stages of the same case." (quoting *Arizona v.

California*, 460 U.S. 605, 618 (1983))); *Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15-

CV-8974, 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) ("Courts apply the law of the case

doctrine when their prior decisions in an ongoing case either expressly resolved an issue or

necessarily resolved it by implication." (quoting *Aramony v. United Way of Am.*, 254 F.3d 403,

410 (2d Cir. 2001))).

Accordingly, the Court grants Defendant's motion as to the section 113 claim and

dismisses the section 113 claim with prejudice.

### ii.  Section 107 claims

Defendant argues that the Court should dismiss the section 107 claims because the TAC

(1) fails "to sufficiently plead that a single CERCLA 'facility' exists," (2) "fails to provide the

requisite specificity regarding the nature and extent of the costs incurred," and (3) fails to

sufficiently allege "whether those costs were necessary costs of response incurred in accordance

with the [National Contingency Plan ('NCP')] and outside of the [Modified Consent Order]."

(Def.'s Mem. 18.)

Plaintiff argues that the TAC properly alleges two separate CERCLA facilities and

sufficiently pleads CERCLA claims related to Defendant's actions.  (Pl.'s Opp'n 6–13.)

"Section 107(a) claims are brought by federal or state agencies that have incurred

response costs or PRPs who incur CERCLA clean up costs without judicial or administrative

intervention."  *Niagara Mohawk Power Corp.*, 596 F.3d at 127 (footnote omitted) (citing *Atl.

*Rsch. Corp.*, 551 U.S. at 135).  To state a cause of action under section 107, a plaintiff must

establish that:

> (1) the defendant is an "owner" or is otherwise liable under 42
> U.S.C. § 9607(a)(1)–(4); (2) the site is a "facility" as defined by 42
> U.S.C. § 9601(9); (3) there has been a release or threatened release
> of hazardous substances at the facility; (4) the plaintiff incurred
> costs responding to the release or the threat; and (5) the costs and
> response conform to the [NCP].[4]

*Price Trucking Corp.*, 748 F.3d at 80 (citing *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 602–

63 (2d Cir. 1999)).

Because Defendant does not dispute that it is an owner under CERCLA or that hazardous

substances were released at facilities, the Court addresses Defendant's assertions as to whether

the TAC alleges (1) a facility, (2) that Plaintiff incurred costs responding to a release or a

threatened release, and (3) that Plaintiff's costs and response conform to the NCP.

### i.   CERCLA facility

Defendant asserts that Plaintiff "concedes for the first time that . . . Williamsburg MGP[]

. . . and [the Refinery] constitute separate facilities that operated on distinct parcels," (Def.'s

Reply 1), and that the TAC "fails to plausibly allege that a single CERCLA facility exists,"

(Def.'s Mem. 11–12).  In support, Defendant asserts that Plaintiff's "own allegations make clear

[that] the Williamsburg MGP and the . . . Refinery [Sites] are entirely distinct facilities" and that

the parties "have performed remedial investigations at their respective former properties under

---

[4]  The National Contingency Plan "detail[s] the steps the [G]overnment must take to
identify, evaluate, and respond to hazardous substances in the environment."  *Niagara Mohawk
Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 136–37 (2d Cir. 2010) (first citing 40 C.F.R.
part 300; and then citing Travis Wagner, *The Complete Guide to the Hazardous Waste
Regulations: RCRA, TSCA, HMTA, EPCRA, and Superfund*, 3d, 326–27 (1999)).  "Adherence to
the plan is the gatekeeper to seeking reimbursement of response costs."  *Id.*

separate NYSDEC regulatory orders because the NYSDEC recognizes that the properties

represent separate facilities." (*Id.*)

Plaintiff argues that in line with the August 2020 Decision and Second Circuit caselaw,

"this case involves two separate CERCLA facilities — the Williamsburg MGP Site and the

[Refinery Site] — and that both have been contaminated by [Defendant's] disposal, release,

and/or threatened release of hazardous substances into the environment." (Pl.'s Opp'n 7.)

Plaintiff argues that while the facilities are "interrelated," "functional units on distinct, adjacent

parcels of land," the TAC "split these two facilities along the lines of common historic

ownership and operation": "The Refinery Site was owned by Exxon and its corporate

predecessors and operated as an oil refinery for decades, while the Williamsburg MGP Site was

owned by [The] Brooklyn Union Gas and — though not part of the Pratt Refinery — controlled

by Exxon's corporate predecessors." (*Id.* at 7–8.)

A facility is defined under CERCLA as:

> (A) any building, structure, installation, equipment, pipe or pipeline
> (including any pipe into a sewer or publicly owned treatment
> works), well, pit, pond, lagoon, impoundment,
> ditch, landfill, storage container, motor vehicle, rolling stock, or
> aircraft, or (B) any site or area where a hazardous substance has been
> deposited, stored, disposed of, or placed, or otherwise come to be
> located; but does not include any consumer product in consumer use
> or any vessel.

*New York v. Next Millennium Realty, LLC*, 160 F. Supp. 3d 485, 506 (E.D.N.Y. 2016) (quoting

42 U.S.C. § 9601(9)). Courts have interpreted "facility" broadly. *See Cytec Indus., Inc. v. B.F.*

*Goodrich Co.*, 232 F. Supp. 2d 821, 836 (S.D. Ohio 2002) (finding that "usually, although

perhaps not always, the definition of facility will be the entire site or area, including single or

contiguous properties, where hazardous wastes have been deposited as part of the same operation

or management"); *Clear Lake Props. v. Rockwell Int'l Corp.*, 959 F. Supp. 763, 768 (S.D. Tex.

1997) (rejecting the argument that a laboratory building and the ground upon which it sits constitute two distinct facilities); *S. Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.*, No. 94-CV-2477, 1997 WL 457510, at *5 (N.D. Tex. Aug. 7, 1997) (finding that "[u]nder the broad statutory definition, the presence of arsenic in these locations is sufficient to establish that the entire [c]ommerce [s]ite is a 'facility' within the meaning of CERCLA"). "The words of the statute suggest that the bounds of a facility should be defined at least in part by the bounds of the contamination." *United States v. Township of Brighton*, 153 F.3d 307, 313 (6th Cir. 1998). "However, an area that cannot be reasonably or naturally divided into multiple parts or functional units should be defined as a single 'facility,' even if it contains parts that are non-contaminated." *Id.*; *see also Niagara Mohawk Power Corp.*, 291 F. Supp. 2d at 125 ("Separate parcels should be considered as a single facility if they 'cannot be reasonably or naturally divided into multiple parts or functional units.'" (quoting *United States v. 150 Acres of Land*, 204 F.3d 698, 709 (6th Cir. 2000))), *rev'd in part on other grounds*, 596 F.3d 112 (2d Cir. 2010).

The August 2020 Decision noted that "Plaintiff's argument[] that it is unreasonable to divide the Bushwick Site into multiple, smaller facilities [was] unavailing" and dismissed the SAC for failure to "plausibly allege that the Bushwick Site constitutes a single CERCLA facility." (Aug. 2020 Decision 19, 21.) In the TAC, unlike the SAC, Plaintiff alleges that there are two separate CERCLA facilities — the Williamsburg MGP Site and the Refinery Site, (TAC ¶¶ 67, 91; Pl.'s Opp'n 7) — which Defendant acknowledges, (Def.'s Mem. 11 (noting that "the Williamsburg MGP and the . . . Refinery are entirely distinct facilities"); Def.'s Reply 1 ("[Plaintiff] concedes for the first time that . . . Williamsburg MGP . . . and [the Refinery] constitute separate facilities . . . .")). The TAC adequately states that Plaintiff discovered "significant petroleum contamination [at the Williamsburg MGP Site], which is entrained with

various other hazardous materials, including, but not limited to, waste oil," (TAC ¶ 59), that

there was a release of hazardous substances, "including metals, VOCs, and SVOCs," at the

Refinery Site and Williamsburg MGP Site, (*id.* ¶¶ 27–28), and that there were "many accidents,

spills, leaks, and fires at the Refinery [Site]" which caused additional releases of hazardous

materials, (*id.* ¶¶ 33–35). *See Alprof Realty LLC v. Corp. of the Presiding Bishop of the Church*

*of Jesus Christ of Latter-Day Saints*, No. 09-CV-5190, 2012 WL 4049800, at *5 (E.D.N.Y. Sept.

13, 2012) ("It is undisputed that the . . . property . . . falls within the statutory definition of a

facility because it is 'a site . . . where a hazardous substance has . . . come to be located.'"

(quoting 42 U.S.C. § 9601(9))); *United States v. Bos. & Maine Corp.*, No. 13-CV-10087, 2016

WL 5339573, at *9 (D. Mass. Sept. 22, 2016) ("[B]ecause the Roundhouse Site and Plow Shop

Pond satisfy CERCLA's definition of facility and can be and have been considered separately

from the rest of Fort Devens for the purposes of this cleanup, it is reasonable and consistent with

CERCLA to define them as separate facilities within Fort Devens for the purposes of this

action.").

Thus, the TAC plausibly alleges that the Williamsburg MGP Site and the Refinery Site

are separate CERCLA facilities and Plaintiff may pursue CERCLA claims as to each facility.

*See New York v. Gen. Elec. Co.*, No. 14-CV-747, 2017 WL 1239638, at *26 (N.D.N.Y. Mar. 31,

2017) (reviewing whether the defendant was liable after the court "determined that 51 and 53

Luzerne are separate facilities, rather than one 'site'"); *Adobe Lumber, Inc. v. Hellman*, 658 F.

Supp. 2d 1188, 1203–04 (E.D. Cal. 2009) (denying motion for summary judgment where the

"TAC unambiguously allege[d] that the [c]ity's sewer is a facility separate from the Woodland

Shopping Center site" and "the relevant area . . . can be 'reasonably or naturally divided into

multiple parts or functional units'" (quoting *Township of Brighton*, 153 F.3d at 313)); *Cytec*

*Indus., Inc. v. B.F. Goodrich Co.*, 232 F. Supp. 2d 821, 836 (S.D. Ohio 2002) (noting that "each

separate facility would give rise to a separate cause of action under CERCLA").

### ii.   Costs incurred responding to the release

Defendant argues that "Plaintiff's cursory allegations that it has incurred costs after it

terminated [the Modified Consent Order] and that such costs are consistent with the NCP fail to

meet the pleading standards set forth in *Iqbal* and *Twombly*" and that "courts have dismissed

CERCLA claims where the facts concerning a claimant's alleged response costs were [pled] at a

level of specificity comparable to, or even greater than, those in the [TAC]."  (Def.'s Mem. 15

(first citing *Iqbal*, 556 U.S. at 679; then citing *Andres v. Town of Wheatfield,* No. 17-CV-377,

2019 WL 2491949, at *7 (W.D.N.Y. June 14, 2019)); *see also* Def.'s Reply 4 ("[C]ourts within

the Second Circuit have recognized that a CERCLA claimant . . . must allege sufficient facts to

support each element." (citing *Bellafaire v. Town of Wheatfield,* 401 F. Supp. 3d 405, 416

(W.D.N.Y. 2019))).)  In support, Defendant cites to multiple out-of-circuit cases and asserts that

"Plaintiff fails to identify any specific work it has done outside of the [Modified Consent Order],

does not allege any specific cost amounts, and fails to identify dates upon which these costs were

allegedly incurred" and that "[w]ithout . . . additional information, there is no basis to determine

that any of Plaintiff's alleged costs after it withdrew from [the Modified Consent Order] were

necessary."  (Def.'s Mem. 14–17.)  Defendant further contends that "whether there is a single

plaintiff or multiple plaintiffs, Second Circuit precedent requires a complaint to include more

than a general statement that the plaintiff has incurred response costs."  (Def.'s Reply 5 (citing

*Warwick Admin. Group v. Avon Products, Inc.*, 820 F. Supp. 116, 121–22 (S.D.N.Y. 1993)).)

Plaintiff argues that it has plausibly alleged that it has incurred costs at the facilities with

sufficient specificity.  (Pl.'s Opp'n 10–11.)  In support, Plaintiff argues that the TAC "identifie[s]

costs it has incurred in investigating, remediating, and monitoring hazardous substances at the two facilities and plead[s] that the costs enumerated in each CERCLA [s]ection 107 claim were consistent with the NCP," which is "[a]ll that is required at the pleading stage is to meet the minimal standard of pleading." (*Id.*) Plaintiff further asserts that at the motion to dismiss stage, it is sufficient to "aver the words 'consistent with the NCP'" and that "[t]he question of consistency with the NCP is ultimately a factual determination at a later stage." (*Id.* at 11 (quoting *New York v. Shore Realty Corp.*, 648 F. Supp. 255, 264 (E.D.N.Y. 1986)).)

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bensch v. Est. of Umar*, 2 F.4th 70, 78 (2d Cir. 2021) (citing Fed. R. Civ. P. 8(a)(2)). "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see also Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) ("The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." (first quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); and then citing *Kittay*, 230 F.3d at 541)). "Rule 8 . . . 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 168 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

The same pleading requirements apply in the CERCLA context. *See Honeywell Int'l Inc. v. R.R. Donnelly & Sons Co.*, No. 16-CV-969, 2020 WL 3802791, at *6 (W.D.N.Y. July 7, 2020)

("The issue here is the pleading requirement for CERCLA claims. *Twombly* and *Iqbal* require pleadings be plausible, regardless of the claim alleged.") "At [the motion to dismiss] stage, [the plaintiff] must allege that it 'incurred costs responding to the release or the threat of release and . . . that the costs and response conform to the [NCP].'" *101 Frost St. Assocs., L.P. v. U.S. Dep't of Energy*, No. 17-CV-3585, 2019 WL 4415387, at *10–11 (E.D.N.Y. Sept. 16, 2019) (alterations omitted) (quoting *Price Trucking Corp.*, 748 F.3d at 80); *see also MPM Silicones II*, 966 F.3d at 214 (noting that CERCLA authorizes contribution "for expenses incurred responding to environmental threats" (alteration in original) (quoting *Commander Oil Corp.*, 215 F.3d at 326)).

District courts in the Second Circuit have generally found that "an allegation that [a] plaintiff has incurred and will continue to incur expenses and costs . . . sufficiently allege[s] recoverable response costs" under section 107. *105 Mt. Kisco Assocs. LLC v. Carozza*, No. 15-CV-5346, 2017 WL 1194700, at *22 (S.D.N.Y. Mar. 30, 2017) (second alteration in original) (quoting *Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F. Supp. 713, 717 (W.D.N.Y. 1991)); *see also 101 Frost St. Assocs., L.P.*, 2019 WL 4415387, at *10–11 (concluding that the plaintiffs plausibly alleged recoverable response costs under CERCLA where the plaintiffs alleged that they "'voluntarily incurred costs associated with the investigation, design, and evaluation of the Far Field Area,' including 'engineering and design costs incurred by . . . [an] environmental consultant'" and alleged "that their incurred costs 'are consistent with the requirements of the [NCP]'" (citing 40 C.F.R. Part 300)); *Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 17-CV-4442, 2018 WL 1542670, at *12 (E.D.N.Y. Mar. 29, 2018) (denying motion to dismiss section 107 claim where the defendant "contend[ed] that the [p]laintiff . . . failed to allege specific response costs" because "at the pleading stage, an allegation by the [p]laintiff that it has

'incurred [and will continue to incur] response costs' sufficiently alleges recoverable response costs under section 107(a)" (fourth alteration in original) (first quoting *Alloy Briquetting Corp.*, 756 F. Supp. at 717; and then citing *State of New York v. Gen. Elec. Co.*, 592 F. Supp. 291, 298 (N.D.N.Y. 1984))); *Cooper Crouse-Hinds, LLC v. City of Syracuse*, No. 16-CV-1201, 2018 WL 840056, at *7 (N.D.N.Y. Feb. 12, 2018) (denying motion to dismiss section 107 claim where the defendant argued that the plaintiff failed "to allege that it incurred any costs outside of the costs incurred complying with" an order because the plaintiff "does not need to specifically identify costs related to the [order] at th[e] [motion to dismiss] stage"); *105 Mt. Kisco Assocs. LLC*, 2017 WL 1194700, at *22 (denying motion to dismiss section 107 claim where the "[p]laintiffs allege that they have undertaken, and will continue to undertake, investigations and actions in response to the release or threatened releases of hazardous substances" — including "environmental sampling and analysis, and coordinating with EPA and state environmental authorities" — "and that they have expended tens of thousands of dollars as a result" (first citing *Alloy Briquetting Corp.*, 756 F. Supp. at 717; and then citing *Com. Holding Co. v. Buckstone*, 749 F. Supp. 441, 444 (E.D.N.Y. 1990))); *Fitzgibbons v. City of Oswego*, No. 10-CV-1038, 2011 WL 6218208, at *9 (N.D.N.Y. Dec. 13, 2011) (concluding that allegation that the plaintiff "has undertaken environmental investigation and response actions and it will be necessary for [the plaintiff] to incur additional costs due to the contamination and the presence of wastes on the [p]roperty" was "sufficient to withstand a motion to dismiss"); *Alloy Briquetting Corp.*, 756 F. Supp. at 717 (noting that courts have found allegations that plaintiff "has incurred and will continue to incur expenses and costs . . ." sufficient to allege recoverable response costs, and finding plaintiff alleged response costs with sufficient specificity where it asserted it "incurred . . . costs for testing, investigation, and remediation of the releases into the soil, subsoil, surface water, and

ground water"); *Com. Holding Co.*, 749 F. Supp. at 444 ("While a private party, to recover its response costs, bears the burden of pleading and proving that the costs incurred are consistent with the NCP, the question of consistency with the NCP cannot be determined on the complaint alone but requires the development of a factual record.").

Contrary to Defendant's assertion, *Andres* and *Bellafaire* are inapposite to the instant case.  (Def.'s Mem 15 (citing *Andres*, 2019 WL 2491949, at *7); Def.'s Reply 4–5 (citing *Bellafaire*, 401 F. Supp. 3d at 416)); *Andres*, 2019 WL 2491949, at *8 (granting motion to dismiss section 107 claim where the plaintiffs' "allegation that they collectively incurred $80,000 in response costs" was insufficient to state a claim); *Bellafaire*, 401 F. Supp. 3d at 416 (granting motion to dismiss section 107 claim where the parties were similar and the class action complaint was "virtually identical to the complaint the court dismissed in [*Andres*, 2019 WL 2491949, at *8]").  In *Andres* and *Bellafaire*, the plaintiffs brought section 107 claims alleging that they "incurred response costs in the form of substantial investigation and sampling costs necessary to determine the nature and extent of the releases, threatened releases, and contamination around the [s]ite," "that their response costs 'exceed $80,000 and additional response costs will be incurred by [the plaintiffs] in the near future,'" and that "their response was 'consistent with the [NCP].'"  *Bellafaire*, 401 F. Supp. 3d at 416 (fourth alteration in original); *Andres*, 2019 WL 2491949, at *7 (same).  The court dismissed the claims because the plaintiffs "d[id] not specify *which [p]laintiffs* incurred the costs of the alleged sampling and investigation" even though they were "in possession of this information and could therefore specify which remedial costs were incurred by whom."  *Bellafaire*, 401 F. Supp. 3d at 416 (emphasis added) (citing *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1475 (D. Colo. 1991)); *Andres*, 2019 WL 2491949, at *7 (same).  Unlike *Andres* and *Bellafaire*, there is only

one plaintiff in this case and Plaintiff has limited its claim for incurred response costs solely to

Defendant, providing fair notice to Defendant.  (*See* TAC ¶¶ 6, 56, 58, 71, 74, 82, 84, 95, 106,

109, 111.)

Thus, the Court adopts the reasoning of majority of district courts in the Second Circuit

and finds that Plaintiff sufficiently alleges in the TAC that it incurred response costs under

section 107.[5]  *See Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 17-CV-4442, 2018

---

[5]  Defendant argues that "the Court has already held that [Plaintiff] is time-barred from recovering costs it may have incurred to address contamination covered by its [Modified Consent Order], which broadly covered contamination at, or emanating from, the Williamsburg MGP." (Def.'s Reply 1.)  In support Defendant asserts that "[s]ince this Court properly determined that the statutory limitations period expired three years after the [Modified Consent Order] was executed" and "Plaintiff was entitled to bring only a [s]ection 113 contribution claim prior to the expiration of the statute of limitations in 2010," Plaintiff "is precluded from seeking any costs incurred under the [Modified Consent Order] through a [s]ection 107 claim."  (Def.'s Mem. 14 (citing R&R at 21).)  Plaintiff asserts that "[n]o portion of the Refinery Site was or is subject to the [Modified Consent Order]."  (Pl.'s Opp'n 3; *see also* TAC ¶¶ 53, 64–87 (alleging that only the Williamsburg MGP was subject to the Modified Consent Order).)  The August 2020 Decision adopted Judge Tiscione's R&R — which noted that a "CERCLA 107 claim is not available when a party had a right of contribution under CECRLA 113 for those same costs" and concluded that "Plaintiff can no longer recover costs incurred for sites under the [Modified Consent Order]."  (R&R 22, 25; Aug. 2020 Decision; Min. Entry dated Mar. 26, 2019; Oral Arg. Tr.)  Judge Tiscione noted that "Plaintiff did not plead . . . that it continued to incur costs at the Williamsburg MGP [Site] *after* the site was terminated under the [Modified Consent Order]" and that "[c]osts, if any, incurred after termination are the only costs eligible for a CERCLA 107 claim for [the Williamsburg MGP Site]."  (R&R 28.)  Unlike the allegations in the SAC, Plaintiff alleges in the TAC that:

> [a]s a result of the releases at and near the Williamsburg MGP Site, since November 14, 2016, the date Plaintiff withdrew from the Modified Consent Order, the Plaintiff has incurred and will continue to incur substantial response costs in taking actions to investigate, remediate, and monitor the hazardous substances, and to restore the Williamsburg MGP Site.

(TAC ¶ 71.)  In a separate count of the TAC, Plaintiff alleges that since "November 14, 2016, [Plaintiff] [has] continued to investigate and incur costs at the Williamsburg MGP Site and the Refinery Site," (*id.* ¶ 56), and that Plaintiff seeks response costs as a result of efforts to "investigate, remediate, and monitor petroleum residuals from the Refinery Site at the Williamsburg MGP Site," (*id.* ¶¶ 81–82; Pl.'s Opp'n 5 (stating that Plaintiff seeks to recover costs related to petroleum residuals since November 14, 2016)).  To the extent that Plaintiff

WL 1542670, at *11 (E.D.N.Y. Mar. 29, 2018) (noting that "a handful of district courts have *sua sponte* created a heightened pleading requirement for CERCLA cases" but agreeing with "a number of courts in the Second Circuit[,] [which] have ruled that CERCLA claims are not subject to the heightened pleading standard of Rule 9(b)" (first citing *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 900 (D. Mass. 1991); and then citing cases)).

### iii.   Conforming to the National Contingency Plan

Defendant argues that Plaintiff fails to allege "facts to demonstrate that it has incurred costs that were necessary and consistent with the [NCP] in order to address contamination that was outside the broad scope of the [Modified Consent Order]." (Def.'s Reply 1–2.) In support, Defendant argues that "the entire premise for Plaintiff's [s]ection 107 claim[s] is that . . . costs were incurred following Plaintiff's withdrawal from an order providing for agency oversight of Plaintiff's cleanup activities" and further argues that "even if Plaintiff theoretically has done some sort of unsanctioned work unrelated to the performance of its duties under the AOC, it has not [pled] facts capable of demonstrating how such work would qualify as costs of response within the meaning of CERCLA, or how such costs are 'necessary and consistent with the [NCP].'" (Def.'s Mem. 14–15.) Defendant also asserts that "[a]ny such work necessarily would have been done without regulatory oversight or direction." (*Id.*)

---

seeks costs incurred at the Williamsburg MGP, which are covered by the Modified Consent Order and incurred prior to November 14, 2016, the Court reiterates that Plaintiff can no longer recover such costs. *See Niagara Mohawk Power Corp.*, 596 F.3d at 128–29 (finding that the plaintiff's claim "fit[] squarely within the more specific requirements of [section] 113(f)(3)(B)" such that the plaintiff could not also seek reimbursement pursuant to section 107); *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 767 (6th Cir. 2014) ("[I]t is sensible and consistent with the text to read [section] 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under [section] 113(f), rather than [section] 107(a)."); *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013) ("[W]e agree with our sister circuits that a plaintiff is limited to a contribution remedy when one is available."). Plaintiff is precluded from seeking any costs incurred under the Modified Consent Order through a section 107 claim.

Plaintiff argues in the TAC that it has "identified costs it has incurred in investigating, remediating, and monitoring hazardous substances at the two facilities and [pled] that the costs enumerated in each CERCLA [s]ection 107 claim were consistent with the NCP," which is "[a]ll that is required at the pleading stage."  (Pl.'s Opp'n 10–11.)  Plaintiff asserts that its "investigation, characterization, and remediation efforts at these sites have not been voluntary" as it "has engaged in NYSDEC ordered site remediation in New York for decades and has coordinated with NYSDEC to investigate the Williamsburg MGP Site for more than a decade" and that even if its costs are considered voluntary, such "costs *are* recoverable under [s]ection 107."  (*Id.* at 9–10 (citing *Atl. Rsch. Corp.*, 551 U.S. at 128).)

Under CERCLA, "the party undertaking the response action must prove that the costs it incurred were 'necessary' and that it incurred those costs in a manner 'consistent with the [NCP].'"  *Cadillac Fairview/Cal., Inc. v. Dow Chem. Co.*, 840 F.2d 691, 695 (9th Cir. 1988) (quoting 42 U.S.C. § 9607(a)(4)(B)); *see also MPM Silicones II*, 966 F.3d at 235 n.18 (noting that section 107 requires that response costs were "necessary" and "consistent with the [NCP]"). "Necessary costs are those required to contain and clean up hazardous releases, and include not only the cost of actual cleanup, but also include costs for investigation, planning, and remedial design."  *APL Co. Pte. v. Kemira Water Sols., Inc.*, 999 F. Supp. 2d 590, 619–20 (S.D.N.Y. 2014) (quoting *N.Y.S. Elec. & Gas Corp. v. FirstEnergy Corp.*, 808 F. Supp. 2d 417, 522 (N.D.N.Y. 2011)).  "[C]ourts in this Circuit have found that 'because initial monitoring, assessment, and evaluation expenses are recoverable . . . the costs of . . . studies are all found to be necessary costs consistent with the [NCP], as CERCLA requires.'"  *105 Mt. Kisco Assocs. LLC*, 2017 WL 1194700, at *22 (citing *MPM Silicones, LLC v. Union Carbide Corp.*, No. 11-CV-1542, 2016 WL 3962630, at *24 (N.D.N.Y. July 7, 2016), *vacated and remanded*, 966 F.3d

at 200)); *see also Yankee Gas Servs. Co. v. UGI Utils., Inc.*, 852 F. Supp. 2d 229, 242 (D. Conn. 2012) (noting that "initial monitoring, assessment, and evaluation expenses are recoverable even absent any subsequent recoverable response costs" (quoting *City of New York v. Chem. Waste Disposal Corp.*, 836 F. Supp. 968, 980 (E.D.N.Y. 1993))).

Thus, to withstand a motion to dismiss, a plaintiff only has to allege it incurred "necessary" costs "in a manner 'consistent with the [NCP].'" *Cadillac Fairview/Cal., Inc.*, 840 F.2d at 695 (quoting 42 U.S.C. § 9607(a)(4)(B))); *see also Bellafaire*, 401 F. Supp. 3d at 416 ("At the pleading stage, [the plaintiffs'] assertion that their sampling and investigation were NCP-compliant is sufficient."); *Next Millennium Realty, LLC*, 160 F. Supp. 3d at 504–05 (holding that to make a prima facie case for liability under section 107, a plaintiff must simply establish that it has "incurred costs responding to the release or the threat" and that "the costs and response conform to the [NCP]"); *Com. Holding Co.*, 749 F. Supp. at 444 ("In light of the liberal pleading requirements of [Rule 8], for pleading purposes, [the plaintiff] 'need only aver the words consistent with the NCP.'" (internal quotation marks omitted) (quoting *Shore Realty*, 648 F. Supp. at 264)).

"[T]he issue of whether the costs were necessary and consistent with the NCP, involves questions of fact that cannot be decided at [the motion to dismiss] stage of the proceedings." *Fitzgibbons*, 2011 WL 6218208, at *9; *see also Nat'l R.R. Passenger Corp. v. N.Y.C. Housing Auth.*, 819 F. Supp. 1271, 1278 (S.D.N.Y. 1993) (concluding that "[c]onsistency with the NCP is a factual question"); *Bradley Indust. Park v. Xerox Corp.*, No. 88-CV-7574, 1991 WL 20008, at *6 (S.D.N.Y. Feb. 4, 1991) (deciding that the resolution of whether the plaintiff incurred costs consistent with the NCP "should be reserved for discovery and trial"); *Com. Holding Co.*, 749 F. Supp. at 444 ("While a private party, to recover its response costs, bears the burden of pleading

26

and proving that the costs incurred are consistent with the NCP, the question of consistency with the NCP cannot be determined on the complaint alone but requires the development of a factual record" (first citing *Shore Realty Corp.*, 648 F. Supp. at 262; and then citing *Mesiti v. Microdot, Inc.*, 739 F. Supp. 57, 62 (D.N.H. 1990))); *City of New York v. Exxon Corp.*, 633 F. Supp. 609, 616 (S.D.N.Y. 1986) (noting that "consistency with the NCP is not a matter which can be resolved on a motion to dismiss; it is a question of fact to be determined at trial upon the merits" and opting to "await the development of a factual record" before ruling on whether consistency was adequately pled); *Shore Realty Corp.*, 648 F. Supp. at 258 (noting that a plaintiff "need not allege detailed compliance with the response methods outlined in the regulations" and that "the question of consistency [with the NCP] is a factual determination that cannot be made without the development of a record").

Plaintiff alleges in the TAC that it "has incurred, and may in the future incur, substantial response costs relating to environmental investigation, remediation, and monitoring of the Williamsburg MGP Site and the Refinery Site" beyond the purview of the Modified Consent Order and that the response costs incurred are "necessary and consistent with the [NCP]," which is sufficient at the motion to dismiss stage.  (TAC ¶¶ 6, 71–72, 82–83, 95–96, 105–06); *see 101 Frost St. Assocs., L.P.*, 2019 WL 4415387, at *10–11 (denying motion to dismiss where the complaint alleged "costs associated with the investigation, design, and evaluation" and stated "that their incurred costs 'are consistent with the requirements of the [NCP], and therefore compensable as necessary costs of response pursuant to 42 U.S.C. [§] 9607'" (citing 40 C.F.R. Part 300)); *Fitzgibbons*, 2011 WL 6218208, at *9 ("Whether [the plaintiff's] spending conforms to the NCP requires a more developed record; it is sufficient that [the plaintiff] has alleged in his proposed amended complaint that he 'has incurred response costs in connection with the

27

[c]ontamination, all of which have been consistent with the [NCP], and are recoverable pursuant to CERCLA." (citing *Com. Holding Co., Inc.*, 749 F. Supp. at 444)).

Because Plaintiff plausibly alleges in the TAC that it has incurred costs responding to the release or the threat at two facilities (the Williamsburg MGP Site and Refinery Site) and that those costs conform to the NCP — and Defendant does not dispute that it is an owner under CERCLA or that hazardous substances were released at the separate facilities — the Court finds that Plaintiff sufficiently states claims under section 107.

### c.   Declaratory Judgment Act claim

Defendant argues that because "Plaintiff's [s]ection 107 and [s]ection 113 claims should be dismissed, the declaratory judgment claim . . . should also be dismissed." (Def.'s Mem. 18.)

Plaintiff argues that because it "has properly [pled] its CERCLA [section] 107 claims, its declaratory judgment claim should proceed." (Pl.'s Opp'n 14.)

A plaintiff cannot maintain a claim for a declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act only creates a procedural mechanism and not an independent cause of action. *California v. Texas*, 593 U.S. ---, ---, 141 S. Ct. 2104, 2115 (2021) ("The Declaratory Judgment Act alone does not provide a court with jurisdiction. (first citing 28 U.S.C. § 2201; then citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–672 (1950); and then citing R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler's the Federal Courts and the Federal System 841 (7th ed. 2015))); *Norton v. Town of Islip*, 678 F. App'x 17, 22 (2d Cir. 2017) ("[T]he Declaratory Judgment Act 'is procedural only . . . and does not create an independent cause of action.'" (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012))); *Chevron Corp.*, 667 F.3d at 244 ("The [Declaratory Judgment Act] gives a district court the discretion to 'declare the legal rights and

other legal relations of any interested party seeking such declaration.' . . .  Like a preliminary

injunction, a declaratory judgment relies on a valid legal predicate." (citations omitted)); *Knox v.*

*Ironshore Indem. Inc.*, No. 20-CV-4401, 2021 WL 256948, at *4 (S.D.N.Y. Jan. 26, 2021) ("The

Declaratory Judgment Act is 'procedural only and does not create an independent cause of

action.'. . . Thus, a plaintiff may not use the Declaratory Judgment Act to 'create legal rights that

do not otherwise exist.'" (quoting *Chevron Corp.*, 667 F.3d at 244–45)); *Travis v. Navient Corp.*,

460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) ("[A] 'request for a declaratory judgment is not a

cause of action; it is a request for a remedy that does not exist independent of a plausible

underlying claim for relief.'" (quoting *Lisa Coppola, LLC v. Higbee*, No. 19-CV-678, 2020 WL

1154749, at *10 (W.D.N.Y. Mar. 10, 2020))); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d

60, 80 (S.D.N.Y. 2012) ("[T]he Declaratory Judgment Act is not a source of federal substantive

rights, because it does not 'provide an independent cause of action.  Its operation is procedural

— to provide a form of relief previously unavailable.'" (quoting *In re Joint E. & S. Dist.*

*Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993))); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d

382, 406–07 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes

of action.").

Because Plaintiff sufficiently alleges CERCLA section 107 claims, the Court declines to

dismiss Plaintiff's claim under the Declaratory Judgment Act.  *See BASF Corp. v. Albany*

*Molecular Rsch., Inc.*, No. 19-CV-134, 2020 WL 705367, at *13 (N.D.N.Y. Feb. 12, 2020)

("[B]ecause [the plaintiff] has viable contribution claims against [the defendants], its requests for

declaratory relief made in conjunction with its [section] 113(f)(3)(B) claims may proceed as

well."), *reconsideration denied*, 2020 WL 3271316 (N.D.N.Y. June 17, 2020); *101 Frost St.*

*Assocs., L.P.*, 2019 WL 4415387, at *11 ("[The [plaintiffs] may pursue a cost recovery action

under [s]ection 107(a) with respect to the Far Field Area.  Thus, there is no dispute that a declaratory judgment could be issued under [s]ection 113(g)(2) with respect to a cost recovery action under [s]ection 107 for costs allegedly incurred at the Far Field Area.").

### d.   New York Navigation Law claim

Defendant argues that "[b]ecause the Court should dismiss Plaintiff's federal CERCLA claims, this Court should also decline to exercise supplemental jurisdiction over Plaintiff's New York Navigation Law claim."  (Pl.'s Opp'n 19.)

Plaintiff argues that because it adequately pleads its section 107 claims and its New York "Navigation Law claim arises from the same set of facts as its federal claims, namely that [Defendant] and its corporate predecessors operated the [Refinery Site] and the Williamsburg Works MGP [Site] in a manner that caused the discharge of petroleum and other contaminants into the environment," the New York Navigation Law claim should proceed.  (Pl.'s Opp'n 14–15.)

"District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 325 (2d Cir. 2021) ("Because the district court properly dismissed [the federal] claim . . . the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over his remaining state law claims." (citing *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006))). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,

712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)); *see also Meyer v. N.Y. State Off. of Mental Health*, 679 F. App'x 89, 91–92 (2d Cir. 2017) ("After the district court dismissed the . . . claims over which it had original jurisdiction, its exercise of supplemental jurisdiction would arguably not promote judicial economy, convenience, fairness, or comity." (citing *Pension Benefit Guar. Corp.*, 712 F.3d at 727)).

Plaintiff alleges that it "is entitled to contributions for remedial expenditures pursuant to the [New York] Navigation Law" because it "has incurred and will continue to incur substantial response costs in taking actions to investigate, remediate, and monitor the petroleum, and to restore the Refinery Site and the Williamsburg MGP Site." (TAC ¶¶ 124–25.) Because Plaintiff has stated a federal claim under CERCLA, the Court has supplemental jurisdiction over Plaintiff's related state law claim under New York Navigation Law, which arises from the same series of transactions. *See* 28 U.S.C. § 1367(a); *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (noting that federal courts may exercise supplemental jurisdiction when federal claims and state claims "stem from the same 'common nucleus of operative fact'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))); *Town of Halfmoon v. Gen. Elec. Co.*, No. 09-CV-228, 2015 WL 6872308, at *2 (N.D.N.Y. Nov. 9, 2015) (permitting CERCLA and New York Navigation Law claims to go forward where the "plaintiffs claimed the discharges are issue should be covered under *both* CERCLA and the [New York] Navigation Law").

Accordingly, the Court denies Defendant's motion as to Plaintiff's New York Navigation Law claim.

### III.   Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses the section

113 claim and denies Defendant's motion as to the section 107, Declaratory Judgment Act, and

New York Navigation Law claims.

Dated:  August 12, 2021
        Brooklyn, New York

                              SO ORDERED:

                                  _____s/ MKB_____
                                  MARGO K. BRODIE
                                  United States District Judge